**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTERACTIVE EDUCATION CONCEPTS, INC., a California Corporation; and IMPROV TVS, INC., a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TCDL TEXAS, INC., a Texas Corporation; THOMAS CASTILLO, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CV 18-cv-7379 RSWL (Ex)<br><br>**ORDER re: Defendant's Motion to Dismiss for Lack of Personal Jurisdiction** [15] |

Plaintiffs Interactive Education Concepts, Inc. ("IEC") and Improv TVS, Inc. ("TVS") (collectively, "Plaintiffs") brought the instant Action against Defendants TCDL Texas, Inc. ("TCDL"); Thomas Castillo ("Castillo"); and Does 1 through 10, inclusive (collectively, "Defendants") for copyright infringement

and breach of contract, among other claims.  Currently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or, alternatively, to Transfer Venue [15] ("Motion"). Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

**I. BACKGROUND**

**A. Factual Background**

IEC and TVS are California corporations with their principal places of business in Los Angeles.  Compl. ¶¶ 6-7, ECF No. 1.  Plaintiffs provide online defensive driving courses throughout the United States under the brand "IMPROV."  Id. ¶ 1.  Plaintiffs own all copyrights in their courses and on their website.  Id. ¶¶ 1, 15.  In 1999, Improv West Associates ("IWA"), owner of the Improv Comedy Club franchise, granted TVS an exclusive nationwide license to use the IMPROV trademarks with Plaintiffs' driving courses.  Id. ¶¶ 2, 17.  This license allows TVS to authorize entities related to it the right to use the trademarks in connection with Plaintiffs' courses.  Id. ¶ 18.

TCDL is a Texas corporation with its principal place of business in Texas.  Id. ¶ 8.  TCDL provides defensive driving courses in Texas, pursuant to a license granted by the State of Texas with curriculum approved by the Texas Education Agency.  Id. ¶¶ 4, 22.

Castillo is the President of TCDL and a resident of Texas. Id. ¶ 9. In 1986, IWA granted Castillo a license to operate Improv Comedy Club entertainment venues in Dallas, Texas. Id. ¶¶ 3, 20. This license was amended in 1994 to allow Castillo to operate IMPROV traffic schools located anywhere in the Dallas and Tarrant counties of Texas. Id. Plaintiffs assert that the license was further amended in 2009 to restrict Castillo's use of the IMPROV mark on the Internet websites created and managed specifically for the duly licensed Improv clubs within Dallas and Tarrant counties.

Plaintiffs allege that Defendants were restricted to offering in-person, classroom driver education courses in Dallas and Tarrant counties by their license agreement with IWA. Id. ¶ 22. As such, Plaintiffs allege that Castillo traveled to California to meet with Plaintiffs' principal, Gary Aleksintser (aka Gary Alexander, "Alexander"), to propose that IEC offer its online courses in Texas under the umbrella of Defendants' Texas licenses. Id. ¶ 22.

In January 2012, IEC and TCDL entered into a written agreement (the "License Agreement"), pursuant to which, TCDL granted an exclusive license to IEC to operate an online course under TCDL's State of Texas licenses. Id. ¶ 6. Around March 2017, Plaintiffs discovered Defendants were offering an online defensive driving course on Defendants' website that allegedly

infringed Plaintiffs' copyrights and acted as a breach of the License Agreement. Id. ¶¶ 26-28.

**B.  Procedural Background**

Plaintiffs filed their Complaint [1] on August 22, 2018, alleging copyright infringement, false advertising, breach of contract, and unfair competition.  Defendants filed their Motion to Dismiss for Lack of Jurisdiction or Improper Venue or, Alternatively, to Transfer Venue [15] on October 15, 2018.  Plaintiffs filed their Opposition [19] on October 26, 2018.  On October 27, 2018, Plaintiffs filed Evidentiary Objections [20] to the Declaration of Thomas Castillo [15-2].  On November 6, 2018, Defendants filed their Reply [21], Evidentiary Objections [22] to the Declaration of Gary Aleksintser [19-1], and a Response to Plaintiffs' Evidentiary Objections [23].

## II. DISCUSSION

**A.  Legal Standard**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the Court may properly exercise jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  Absent formal discovery or an evidentiary hearing, a plaintiff need only make a prima facie showing that jurisdiction is proper to survive dismissal. Id. at 1154.

To satisfy this burden, a plaintiff can rely on the

allegations in his complaint to the extent they are not controverted by the moving party. Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 982 (C.D. Cal. 2013). If defendants adduce evidence controverting the allegations, however, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Id. at 982 (citation omitted). "Conflicts between parties over statements contained in affidavits [or declarations] must be resolved in the plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). "At the same time, however, the plaintiff must submit admissible evidence in support of its prima facie case." Am. Inst. of Intradermal Cosmetics, Inc. v. Soc'y of Permanent Cosmetic Prof'ls, No. CV 12-06887 GAF (JCGx), 2013 WL 1685558, at *4 (C.D. Cal. Apr. 16, 2013).

Generally, "personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154-55. California authorizes jurisdiction to the full extent permitted by the Constitution. See Cal. Code Civ. Proc. § 410. Therefore, the only question the Court must ask is whether the exercise of jurisdiction over Defendants would be consistent with due process. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

Due process requires that a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts requires that the defendant must have purposefully availed itself of the privilege of conducting activities within the foreign jurisdiction, thereby invoking the benefits and protections of the foreign jurisdiction's laws. See Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987).

There are two recognized bases for exercising jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises where a defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984).

**B.     Discussion**

1.     Evidentiary Objections

Plaintiffs make six evidentiary objections to statements made in the Declaration of Thomas Castillo. See Pls.' Evid. Objs., ECF No. 20. The Court **OVERRULES as Moot** Objection Nos. 1-5, as the evidence is not

relied upon by the Court. Plaintiffs' Objection No. 6[1] that the advertisement on TCDL's website constitutes inadmissible hearsay, is also **OVERRULED** because the objected to statement is not being used for the truth of the matter asserted, but rather, it is being offered to show that the advertisements appearing on TCDL's website were not directed to California. As such, the evidence proffered is not inadmissible hearsay. See Fed. R. Evid. 801(c).

Defendants make six evidentiary objections to statements contained in the Declaration of Gary Aleksintser. See Defs.' Evid. Objs., ECF No. 22. Defendants' Objections Nos. 1, 4, 5, and 6 are **OVERRULED as Moot** because the Court does not rely on the objected to material in its analysis. Defendants' Objection No. 2, to Alexander's statement that Castillo "tried to convince IEC to do business with TCDL," on the grounds that Alexander lacks personal knowledge of Castillo's intent and the testimony is speculative and conclusory, is **OVERRULED** because the Court relies on the statement only to show the parties disagree on the facts surrounding this case. Defendants' Objection No. 3 to Alexander's description of the contents of the October 27, 2010 email is **SUSTAINED** because the email

---

[1] The objected to portion of the declaration states, "[t]hose advertisements state that the course is licensed by the State of Texas, and that the course is offered for those persons seeking dismissal of tickets issued in the State of Texas." Pl. Evid. Objs., No. 6.

7

itself (Aleksinster Decl. Ex. C, ECF No. 19-1) is the best evidence.

   2.  Personal Jurisdiction

      a.  *General Jurisdiction*

General jurisdiction over a foreign corporation is appropriate when the corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe, 326 U.S. 310, 317 (1945)). TCDL is a Texas corporation with its principal place of business in Texas. Compl. ¶ 8. Moreover, Defendants assert that TCDL's sole business is offering defensive driving classes in Texas, and Plaintiffs do not contend otherwise. Mot. at 1:19-20. As such, TCDL's contacts with California are not substantial enough to render it "at home" in California and general jurisdiction is not proper over TCDL.

General jurisdiction is also not proper over Castillo. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). Castillo has been a resident of Dallas County, Texas, since 1985 and plans to continue living in Dallas, Texas for the foreseeable future. Castillo Decl. ¶ 2. Castillo owns a home in Dallas and works there. Id. ¶ 2. Plaintiffs' allegation that Castillo traveled to California on one

occasion to meet with Plaintiffs, is insufficient to demonstrate Castillo is "at home" in California.

  b. *Specific Jurisdiction*[2]

The Ninth Circuit employs a three-part test to determine whether a court has specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1227-28 (9th Cir. 2011) (citations omitted). Plaintiffs bear the burden of proving the first two prongs, and if Plaintiffs do so, the burden shifts to

---

[2] Plaintiffs allege that Defendants, TCDL and Castillo, are alter egos of one another. Compl. ¶ 12. In both the Defendants' Motion and the Plaintiffs' Opposition, the parties combine the specific jurisdiction analysis for both Defendants. Thus, the Court also analyzes specific jurisdiction with respect to the Defendants collectively. The Court notes that regardless of whether the contacts are analyzed collectively or separately, the result is the same.

Defendants to prove a "compelling case" the exercise of jurisdiction would be unreasonable. Id. at 1228.

In evaluating the first prong, courts distinguish between claims sounding in contract and claims sounding in tort. See Schwarzenegger, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract . . . . A purposeful direction analysis . . . is most often used in suits sounding in tort." Id. Because Plaintiffs assert claims sounding in both tort and contract, both tests are at issue. Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015).

### i. *Purposeful Direction*

To establish purposeful direction, Plaintiffs must satisfy a three-part test derived from the Calder effects test: Defendants must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 805 (citation omitted).

To commit an "intentional act" the defendant must intend to perform the actual, physical act, rather than the result. Id. at 797. Here, Plaintiffs allege TCDL was offering an online driving course using the IMPROV trademark that was nothing more than a copy of Plaintiffs' Course, which constituted willful copyright infringement. Compl. ¶¶ 26-27. Plaintiffs further allege Defendants' website infringed Plaintiffs'

copyrights by copying text from IEC's website verbatim, and that Defendants' website included advertising information that is unique to Plaintiffs and is false as to Defendants. Id. ¶ 28. Thus, Plaintiffs have pled sufficient facts demonstrating Defendants acted intentionally in using Plaintiff's course and information on Defendants' website, regardless of whether Defendants intended to engage in willful copyright.

"The second part of the Calder-effects test requires that the defendant's conduct be expressly aimed at the forum." Brayton Purcell, 606 F.3d at 1129. In evaluating this prong, the Court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to that forum." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1070 (9th Cir. 2017) (quoting Walden v. Fiore, 571 U.S. 277, 289 (2014)). Here, Plaintiffs allege that Defendants willfully infringed Plaintiffs' copyright, and it can be inferred from the pleadings that Defendants knew Plaintiffs were located in California.[3] However, defendants' own contacts with California are not sufficient to satisfy the express

---

[3] For example, the License Agreement specifically refers to IEC as a "Ca Corporation." Aleksinster Decl. Ex. C. Further, prior to the parties meeting in California, Castillo sent an email to Alexander, showing that he was aware Alexander was based in California, "I may be out in L.A. . . . in the next 8 weeks so we could get together." Id.

11

aiming prong.

First, the License Agreement itself is insufficient to establish express aiming by the Defendants, even if Plaintiffs' performed the bulk of their contractual duties in California. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (holding that a contract with a party in the forum state alone is insufficient to establish minimum contacts); Walden, 571 U.S. at 285-86 (citations omitted) ("[I]t is . . . insufficient to rely on . . . the 'unilateral activity' of a plaintiff" in determining whether defendant's connection with the forum is sufficient to support jurisdiction).

Next, Plaintiffs allege that Defendants' website constitutes express aiming, because TCDL advertised and sold the online course at issue through its website. Opp'n at 8:1-4. Defendants argue that the website is "geographically irrelevant" in California because it was designed to assist with the dismissal of traffic violations in Texas only, that the website was passive in the sense that customers came to it, rather than it being directed to California, and that characterizing the website as interactive would not establish a substantial connection from Defendants to California. Mot. at 9:3-10; Reply at 3:20-22. Defendants' website, which offered a Texas Driver's Education course to consumers who received traffic tickets in the State of Texas, without more, is not "conduct connect[ing

Defendants] to the forum in a meaningful way." Walden, 571 U.S. at 290; see also Schwarzenegger, 374 F.3d at 799 (giving little weight to a similar argument and stating that the plaintiff "maintain[ed] an Internet website that [was] available for viewing in California and, for that matter, from any Internet café in Istanbul, Bangkok, or anywhere else in the world"). Thus, Plaintiffs have not established that Defendants' purposefully directed their conduct to California, and as such, the Court need not address the third prong of the Calder test.

## ii. *Purposeful Availment*

"An out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident." HK China Group, Inc., 417 F. App'x. at 666 (citing Burger King Corp., 471 U.S. at 478). "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are also considered. Burger King, 471 U.S. at 479.

Applying this standard, and based on many of the same facts as discussed above, the Court concludes that Plaintiffs have not established that Defendants purposefully availed themselves of California. First, the parties dispute whether they discussed the License Agreement at the meeting in California. Even assuming the License Agreement was discussed during the meeting, the meeting was only one part of at least a year-long

13

course of negotiations.[4] Plaintiffs do not argue that any other meetings took place in California, and provide no support for its assertion that Defendants persistently reached out to Plaintiffs. Further, the terms of the contract and the parties' actual course of dealings do not reveal that Defendants' purposefully availed themselves of California. The License Agreement involves Defendants "sublicens[ing] [their] approval [from the State of Texas] to operate school and curriculum *in the State of Texas*" to Plaintiffs for their online course, entitled "Aware Driver *Texas*," which Plaintiffs offered to drivers who received traffic tickets in Texas. Pl.s' Opp'n, Ex. F (emphasis added). The crux of the License Agreement concerns Texas,[5] and its only connection to California is that Plaintiffs' reside there. Such connection insufficient to support a finding that Defendants availed themselves of doing business in California.

Given that Defendants' contacts with California are too,"random, fortuitous, or attenuated" to confer jurisdiction over Defendants, Walden, 571 U.S. at 286, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Jurisdiction. Because the Court lacks jurisdiction over the Defendants, it need not address Defendant's

---

[4] See Aleksinster Decl. Exs. C-E (revealing emails between the parties spanning from October 2010 to October 2011).

[5] Throughout the License Agreement, the parties referred to Texas as the "Territory." See Pl.s' Opp'n, Ex. F.

Motion to Dismiss for Venue or Alternative Request to Transfer Venue.

### 3. Jurisdictional Discovery

It is "within the sound discretion of the district court" to decide whether to allow jurisdictional discovery. Dale Tiffany, Inc. v. Meyda Stained Glass, LLC, No. 2:17-CV-00536-CAS(AGRx), 2017 WL 4417585, at *7 (C.D. Cal. Oct. 2, 2017) (citing Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008)). Here, Plaintiffs request jurisdictional discovery on (1) the parties' correspondence regarding solicitation and negotiation of the License Agreement; (2) the locations of individuals who received advertising of Defendants' online course and who purchased the course; and (3) the content of Castillo's declaration. Opp'n at 9:5-9. However, Plaintiffs provide no support as to why permitting discovery on these issues will change the Court's analysis.

First, even if Plaintiffs discovered facts showing that Defendants made a greater effort to contract with Plaintiffs, this would still be inadequate to confer jurisdiction over Defendants, given that other than potentially one meeting, Defendants engaged in all other negotiations from Texas, performed their contractual duties from Texas, and the crux of the License Agreement involves Texas. Moreover, even if Plaintiffs adduced facts showing that some California residents viewed or purchased Defendants' online

course, this would not show that Defendants purposefully directed their conduct to California. The course itself is geared towards Texas consumers who received traffic tickets in Texas, and Plaintiffs provide no evidence refuting Defendants' contention that the advertisements on Defendants' website "are not directed to the State of California or persons residing in the State of California." Castillo Decl. ¶ 15. <u>See Terracom v. Valley Nat'l Bank</u>, 49 F.3d 555, 562 (9th Cir. 1995) ("[T]he Court need not permit even limited discovery" where plaintiffs fail to show more than speculative allegations of attenuated jurisdictional contacts "in the face of specific denials made by Defendants"). Lastly, Plaintiffs have not identified why discovery of the contents of Castillo's declaration would demonstrate that jurisdiction is proper. <u>See Barantsevich v. VTB Bank</u>, 954 F. Supp. 2d 972, 996 (C.D. Cal. 2013) ("Jurisdictional discovery need not be allowed . . . if the request amounts merely to a 'fishing expedition.'"). As such, the Court **DENIES** Plaintiffs' jurisdictional discovery request in its entirety.

///
///
///
///
///
///

## III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction; **GRANTS as moot** Defendants' Alternative Motion to Dismiss for Improper Venue or to Transfer Venue; and **DENIES** Plaintiffs' request for jurisdictional discovery.

**IT IS SO ORDERED.**

DATED: January 8, 2019      RONALD S.W. LEW

    **HONORABLE RONALD S.W. LEW**
    Senior U.S. District Judge